**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 2:23-CR-426 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | CORPUS CHRISTI, TEXAS |
| | . | THURSDAY, NOVEMBER 21, 2024 |
| JOSE LUIS HERNANDEZ, | . | 10:03 A.M. TO 10:36 A.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . . . . .

**RE-ARRAIGNMENT**

**BEFORE THE HONORABLE JASON B. LIBBY**
**UNITED STATES MAGISTRATE JUDGE**

APPEARANCES:                    SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: MARTIN SOLIS

CASE MANAGER:                   KENDRA PEARSON

OFFICIAL INTERPETER:            MILLIE MACOSSAY

TRANSCRIPTION SERVICE BY:

**TRINITY TRANSCRIPTION SERVICES**
**1081 Main Street**
**Surgoinsville, TN 37873**
**281-782-0802**
**battshott@aol.com**

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**TRINITY TRANSCRIPTION SERVICES**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | . | **CASE NO. 2:23-CR-426** |
| | . | |
| **PLAINTIFF,** | . | |
| | . | |
| **V.** | . | **CORPUS CHRISTI, TEXAS** |
| | . | **THURSDAY, NOVEMBER 21, 2024** |
| **JOSE LUIS HERNANDEZ,** | . | **10:03 A.M. TO 10:36 A.M.** |
| | . | |
| **DEFENDANT.** | . | |

. . . . . . . . . . . . . . . . .

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | . | **CASE NO. 2:23-CR-497** |
| | . | |
| **PLAINTIFF,** | . | |
| | . | |
| **V.** | . | |
| | . | |
| **JESSICA PACHECO DE LA CRUZ,** | . | |
| | . | |
| **DEFENDANT.** | . | |

. . . . . . . . . . . . . . . . .

**RE-ARRAIGNMENT**

**BEFORE THE HONORABLE JASON B. LIBBY**
**UNITED STATES MAGISTRATE JUDGE**

Appearances:

**For the GOVERNMENT:**          **AMANDA GOULD, ESQ.**
                                  **JOSEPH GRIFFITH, ESQ.**
                                  Assistant United States Attorney
                                  Office of the United States
                                    Attorney
                                  800 N. Shoreline Blvd., Suite 500
                                  Corpus Christi, TX 78401

<u>Appearances</u> (cont.)

**For DEFENDANT HERNANDEZ:**     **KRISTEN D. LANGFORD-HARRIS, ESQ.**
Assistant Federal Public Defender
Office of the Federal Public
   Defender
606 N. Carancahua, Suite 401
Corpus Christi, TX 78401-0697

**For DEFENDANT DE LA CRUZ:**     **ORLANDO JIMINEZ, ESQ.**
JIMINEZ JUSTICE CENTER
320 West McIntyre Street
Edinburg, TX 78541

U.S. Probation Office:        Melody Essenberg

United States Marshal:        Samuel Buttitta
Luke Byars

Transcription Service:       Cheryl L. Battaglia
Trinity Transcription Services
1081 Main Street
Surgoinsville, TN 37873
281-782-0802
battshott@aol.com

Corpus Christi, Texas; Thursday, November 21, 2024; 10:03 a.m.

(Official Interpreter Present.)

CASE MANAGER PEARSON: Court calls *C-23-CR-426, United States versus Jose Luis Hernandez; C-23-CR-497, United States versus Jessica Pacheco De La Cruz.*

May I have appearances, please?

MS. GOULD: Good morning, your Honor. Amanda Gould on behalf of the United States in the Hernandez case.

MR. GRIFFITH: Good morning, your Honor. Joseph Griffith for the United States on the De La Cruz case.

(Pause in the proceeding.)

MS. LANGFORD: Kristen Langford of Mr. Hernandez.

MR. JIMINEZ: Your Honor, good morning, your Honor. Orlando Jiminez on behalf of Miss Jessica Pacheco De La Cruz, your Honor. Good morning.

THE COURT: Okay. Good morning.

I'm Judge Libby. Let me start by taking some announcements from the lawyers. What is the announcement for your client, Ms. Langford.

MS. LANGFORD: Your Honor, we're going to plead guilty ——

(Pause in the proceeding.)

(Voices whispering.)

MS. LANGFORD: We're going to plead guilty to Count One without a written plea agreement and without a written stip

of fact.

THE COURT: And then, Miss Gould, are you ready to tell the Court at the right time what the elements are?

MS. GOULD: Yes, your Honor.

THE COURT: Okay. So ——

MS. GOULD: Maybe. Hold on just one minute.

THE COURT: I looked at it this morning. I have my statute book before. But just so you're not caught off guard in that regard. I'll ask you to do that.

MS. GOULD: Okay.

THE COURT: And then, Mr. Hernandez, what is the announcement for your client?

MR. JIMINEZ: Your Honor, it is a re-arraignment to Count One of the indictment, your Honor.

THE COURT: Okay. And do you go by Miss Pacheco or Miss De La Cruz?

DEFENDANT DE LA CRUZ: Miss Pacheco.

THE COURT: Miss Pacheco. Okay. All right.

MR. GRIFFITH: That the —— that is with a plea agreement within Guideline range and a stipulation of fact.

THE COURT: And it's which count again?

MR. JIMINEZ: Count One, your Honor.

MR. GRIFFITH: There's only one count.

THE COURT: Only one count. That's right. One count with a plea agreement. All right. This will help me get

organized for this morning.

**(Pause in the proceeding.)**

THE COURT: So, again, good morning. I'm Judge Libby.

The procedure —— first off, your lawyers told me that you would like to enter a plea of guilty today. Is that how you would like to handle your case, Mr. Hernandez?

DEFENDANT HERNANDEZ: Yes, sir.

THE COURT: And Miss De La Cruz?

DEFENDANT DE LA CRUZ: Yes, your Honor.

THE COURT: And it is De La Cruz?

DEFENDANT DE LA CRUZ: Yes.

THE COURT: Okay. I'm sure your lawyers have you prepared.

But the procedure that we must follow requires that I place you under oath and ask you some very basic questions to make sure that you understand the charge and —— and that you understand your rights.

And then at the end of these questions, I will take your plea.

**(Pause in the proceeding.)**

THE COURT: I do this every day. You don't. So if there's at any time you don't understand a question or if you need to talk to your lawyer, just get my attention and let me know. Okay?

All right. Let's start with the oath. Please raise your right hand to be sworn.

**(Defendants sworn.)**

**THE COURT:** Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Miss De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes, sir, your Honor.

**THE COURT:** All right. Thank you. You may lower your hand.

You've been placed under oath. And if you provide false answers to any of the questions I ask, those answers could be used against you in a prosecution for perjury or for making a false statement.

What is your true and complete name? Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Jose Luis Hernandez.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Jessica Pacheco De La Cruz.

**THE COURT:** And how old you are you, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Thirty-four.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Thirty-three.

**THE COURT:** How far did you go in school, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** I did one year in college.

**THE COURT:** So you graduated from high school?

**DEFENDANT HERNANDEZ:** Yes.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Finished high school.

**THE COURT:** Okay. These are questions I ask everyone in these types of proceedings.

Do you read and write English, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** Miss De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Have you ever had any type of serious mental illness, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** No, sir.

**THE COURT:** And Miss De La Cruz?

**DEFENDANT DE LA CRUZ:** No.

**THE COURT:** Are you taking anything today that might cause you to be confused? Drugs, alcohol, pills or medicine, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** No, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** No.

**THE COURT:** Counsel, do you believe our client is competent, Ms. Langford?

**MS. LANGFORD:** Yes, your Honor.

**THE COURT:** Mr. Jiminez?

**MR. JIMINEZ:** Yes, your Honor.

**THE COURT:** I find each to be so.

The — the first thing I need to explain is what my role is in your case. I'm a Magistrate Judge. I'm not the judge who's going to decide your sentence.

The presiding case in your case is, is United States District Judge Nelva Gonzalez Ramos. That means Judge Ramos will be the one to decide your sentence.

You have the right to plead guilty before Judge Ramos, but you don't have to. I have the authority to take your plea of guilty if you consent. The bottom line is if I take your plea of guilty, that's all I'm going to do in your case.

Do you understand, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Do you consent to plead guilty before me, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** All right. Your consent forms will be made part of the record.

I next need to go over the charge with you. You're charged in separate cases unrelated. The — the formal

charging document is called an indictment. And in your case, Mr. Hernandez, the —— the most recent indictment is called a superseding indictment. That means there was a change at some point.

Have you received a copy of the superseding indictment in your case ——

DEFENDANT HERNANDEZ: Yes, your Honor.

THE COURT: And has your lawyer explained it, Mr. Hernandez?

DEFENDANT HERNANDEZ: Yes, sir.

THE COURT: And in your case, Miss De La Cruz, it's the original indictment. But have you also received a copy of the indictment?

DEFENDANT DE LA CRUZ: Yes.

THE COURT: And has your lawyer also explained it to you, Miss De La Cruz?

DEFENDANT DE LA CRUZ: Yes.

THE COURT: So, Mr. Hernandez and Miss Langford this is to Count One?

MS. LANGFORD: Yes, your Honor.

THE COURT: Okay. So, Mr. Hernandez, in Count One, ——

(Pause in the proceeding.)

THE COURT: —— of the superseding indictment, I guess it's probably easiest just to call it ——

**(Pause in the proceeding.)**

**THE COURT:** —— trafficking in a firearm.  And more specifically, the superseding indictment in Count One alleges that, on or about July 28th of 2023, it's alleged that you did receive from another person in and affecting interstate and foreign commerce, a firearm.  That is, a Barrett .50 caliber rifle.

It's also alleged in Count One that you knew, or had reasonable cause to believe, that the receipt of this firearm would constitute a felony.  And it's alleged that you either attempted to receive this firearm or unlawfully, or that you conspired to do so, or that you aided and abetted in the receipt of this firearm.

Miss Gould, would you please tell us what the prosecution would have to prove for Mr. Hernandez to be found guilty, that is, the elements of the offense?

**MS. GOULD:**  Yes, your Honor.

One thing that I would like to address, just to be clear for the record.  There was a Motion to Dismiss that was filed in this case.

**THE COURT:**  Okay.

**MS. GOULD:**  One of the allegations in that Motion to Dismiss that the charge was duplicitous.

The Court found that the charge was duplicitous as we charged it.  And, in fact, this would affect the statute itself

as well. We were ordered to elect a theory upon which to proceed.

THE COURT: Okay.

MS. GOULD: We elected a theory of conspiracy.

THE COURT: Okay. That helps. That's — that helps narrow down what — what the elements would be.

MS. GOULD: Yes, your Honor.

THE COURT: So if it — so, Mr. Hernandez, has your lawyer explained all of that to you?

DEFENDANT HERNANDEZ: Yes.

THE COURT: It's a little bit complicated.

But Judge Ramos decided that the prosecution must choose their theory of culpability so that if you were to go to trial, you wouldn't have to defend against various ways to be guilty of the offense.

Judge Ramos wanted them — the prosecution to narrow it down. And the prosecution elected to narrow it down to the theory of conspiracy. It's a little bit confusing. But that was to your benefit.

Do you understand?

DEFENDANT HERNANDEZ: Yes, sir.

THE COURT: All right. You may continue.

MS. GOULD: So that being said, we did charge 933(a)(2). And I believe the elements of that are that the Defendant did conspire to receive from another person any

firearm.  That the receipt of that firearm was in, or otherwise affecting, interstate or foreign commerce.  And that the recipient knew, or had reasonable cause to believe, that the receipt would constitute a felony.

In this case, that felony was the, excuse me ——

**(Pause in the proceeding.)**

**MS. GOULD:** the allegation that was in Count Two, which was straw purchasing.

**THE COURT:**  The straw purchasing.

**MS. GOULD:**  Yes.

**THE COURT:**  Okay.

Do you understand that's what the prosecution would have to prove before you could be found guilty, Mr. Hernandez?

**DEFENDANT HERNANDEZ:**  Yes, sir.

**THE COURT:**  Okay.  I'm going to stick with you.  And then we'll come to Miss De La Cruz in a second.

**(Pause in the proceeding.)**

**THE COURT:**  It's appropriate that I tell you what the maximum sentence is that you face, not necessarily what you will receive.

But, Mr. Hernandez, you face up to 15 —— for this offense, you face up to 15 years in prison, a fine of up to $250,000, and there is also up to 3 years of federal supervised release, and a mandatory $100 Special Assessment.

Do you understand the maximum sentence,

Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** All right. Now, Miss De La Cruz, your case is a little bit more straightforward. Frankly, it's a drug trafficking crime.

And you're charged with possessing with intent to distribute more than 500 grams of cocaine. More specifically, the indictment alleges that, on or about September 3rd, 2023, it's alleged that you did knowingly and intentionally possess with intent to distribute a controlled substance.

The indictment alleges the offense involved more than 500 grams of a mixture or substance containing a detectible amount of cocaine. That is, the gross weight was alleged to be approximately 940 grams.

Do you understand that to be the charge in your case, Miss De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes, your Honor.

**THE COURT:** Now in order for you to be guilty of this offense, Ms. De La Cruz, the prosecution will have to prove four things.

First, that you knowingly possessed a controlled substance. Second, that the substance was, in fact, cocaine or a mixture or substance containing cocaine. Third, the prosecution would have to prove that you possessed the cocaine with the intent to distribute. And then finally, the

prosecution would have to prove that the cocaine weighed more than 500 grams.

Do you understand that's what the prosecution would have to prove in your case, Miss De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes, your Honor.

**THE COURT:** Okay. Now in your case, Miss De La Cruz, I also have to tell you of the — the sentencing range.

For this offense, there is a mandatory minimum 5 year period of imprisonment and a maximum of up to 40 years in prison without probation, parole, or a suspended sentence. The maximum fine is up to five million dollars. There is a minimum period of four years of federal supervised release which could last the rest of your life. There is also a mandatory $100 Special Assessment and community restitution up to the amount of any fine.

Do you understand the minimum and the maximum sentence?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Now I want to explain to both of you supervised release in — in a little bit more detail.

It's required in your case, Ms. De La Cruz, it's not required in — in your — in your case, Mr. Hernandez. But you're going to be placed on supervision. That's just how it works if you receive a — a prison sentence, almost always.

And what federal supervision is, it's a period of

13

supervision of your behavior after you're released from confinement. And while you are on supervision, there are certain rules that you have to follow. And those rule —— it's kind of like being on bond, but it's a little bit different. Judge Ramos will explain those rules to you at the Sentencing Hearing.

But you'll have to report to a probation officer periodically, fill out a monthly supervision report, not commit new law violations. Depending on your history, they'll be some other rules.

But the reason I'm explaining this is because if you violate the rules, you could be brought back to court for a revocation hearing. And if Judge Ramos determined that you had violated the rules, you could be sent back to prison for an additional term.

Do you understand, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Are you a citizen of the United States, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** The rules still require that I tell you,

**TRINITY TRANSCRIPTION SERVICES**

you're pleading guilty to a felony offense. And if you were not a — if you were not a citizen, a consequence of being found guilty is that you could be deported. That, of course, does not apply if you are a citizen.

And I, I'm sorry, I don't remember your criminal histories. But it's appropriate that I tell you, even as a citizen, there are consequences of being convicted of a felony, such as losing your right to vote, to hold public office, to serve on a jury, to possess firearms or ammunition. And there are, you know, certainly other consequences relating to employment and other things.

But do you understand this, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** And one other thing in your case, Mr. Hernandez, there's a — a notice of a criminal forfeiture in your case. And what that basically means is — is that usually it means the Government's going to seize the firearm.

But it — this forfeiture notice also tells you that the Government may forfeit or seek to seize from you, property that was derived from the offense or used in the commission of the offense.

Do you understand that?

**DEFENDANT HERNANDEZ:** Yes, sir.

THE COURT: Okay. Now ——

(Pause in the proceeding.)

THE COURT: Next are —— the next thing I need to explain are what I refer to as your trial rights for both of you.

What this means is I need to explain that you are not required to plead guilty. Even if you are guilty, you still have an absolute right to maintain a plea of not guilty and to have a trial by jury where you would be presumed innocent. And you could not be convicted unless the prosecution proved that you're guilty by presenting witnesses into evidence, and proof beyond a reasonable doubt.

And if you had a trial, it would be before the District Judge and a jury if you chose one. And you could not be convicted unless the verdict of the jury was unanimous. That means that all 12 of the jurors would have to vote for a conviction before you could be convicted.

Do you understand this, Mr. Hernandez?

DEFENDANT HERNANDEZ: Yes, sir.

THE COURT: And do you as well, Miss De La Cruz?

DEFENDANT DE LA CRUZ: Yes.

THE COURT: Okay.

(Pause in the proceeding.)

THE COURT: Now, Mr. Jiminez, are you appointed or retained —— you're appointed.

**MR. JIMINEZ:** Retained, your Honor.

**THE COURT:** You're retained. I'm sorry. I misspoke.

Now in your case, Mr. Hernandez, Ms. Langford is appointed, includes your entire case and a trial if you wanted on.

Do you understand?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** Now, Ms. De La Cruz, you have hired a lawyer. That's your Constitutional right. But the rules require that I tell you if for some reason you could not afford Mr. Jiminez to represent you at trial, you would not have to represent yourself. Because you have a Constitutional right to counsel. And if you couldn't afford one, one would — one would be appointed to be your lawyer.

Do you understand?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Now I fully expect that if you wanted a trial, Mr. Jiminez would represent you at trial. It's just one of the things I'm required to tell you.

Do you understand?

**DEFENDANT DE LA CRUZ:** Yes, sir.

**THE COURT:** Now at trial for both of you, you would be present in open court during the entire trial. And your lawyer would have the right to cross examine the prosecution's witnesses. Your lawyer could also present witnesses into

evidence on your behalf.

Your lawyer could have subpoenas issued that would compel other witnesses to come to court.  You could testify in your own defense, but only if you wanted to.  Because each of you have a right to remain silent.  And if you chose not to testify, Judge Ramos would instruct the jury that they could not use that decision against you for any purposes.

That basically means you could sit through the entire trial and never testify or say a word.

Do you understand that you have these trial rights, Mr. Hernandez?

**DEFENDANT HERNANDEZ:**  Yes, sir.

**THE COURT:**  Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:**  Yes.

**THE COURT:**  If you plead guilty today as to this case, or the —— this charge that you're pleading guilty to, you will be waiving these rights.  And that means that there's not going to be a trial or any witnesses.  And you will be found guilty because you tell me that you're guilty.

Now do you understand, Mr. Hernandez?

**DEFENDANT HERNANDEZ:**  Yes, sir.

**THE COURT:**  And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:**  Yes.

**THE COURT:**  All right.  Very well.

There's one thing that I forgot to ask, Ms. Gould.

There's no plea agreement in Mr. Hernandez' case.  So what's going to happen with Count Two?

**MS. GOULD:**  He had already pled guilty to Count Two.

**THE COURT:**  He had already pled guilty to Count Two.

**MS. GOULD:**  Yes, your Honor.  And so actually ——

**THE COURT:**  Oh, so is this where the defense said we're pleading guilty to Count Two.  And the prosecution, you all can go forward on Count One if you want to.  And you said, okay, we will.

**MS. GOULD:**  It kind of didn't happen that way.

**THE COURT:**  Okay.

**MS. GOULD:**  We had walked in intending —— well, Mr. Hernandez intended to plead guilty to both counts.  But there were some questions by the judge at the time of the plea. And then in discussions with counsel, it seemed that the best way to resolve that problem was to ——

**THE COURT:**  To push it off, litigate the motion ——

**MS. GOULD:**  Yes, your Honor.

**THE COURT:**  Clean it up.  Okay.

**MS. GOULD:**  Yes.  Yes.

**THE COURT:**  Okay.  Thank you for that.  Now I'm up to speed on that.

Sometimes I need to put on the record what's going to happen with the other counts to make sure everybody's in agreement because if a person pleads guilty to one count, he or

she has a right to know what's going to happen to the other count.

And, apparently, you've already been found guilty of Count Two, which simplifies things for me.

Do you understand all of that, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** All right. Very good.

Now, I've gone over with you your trial rights. I next need to go over with you the plea agreement or the lack of a plea agreement.

In your case, Mr. Hernandez, you are pleading guilty without a plea agreement. That means that you do not have any promises from the prosecution about your case.

Do you understand that, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** Has anybody made any promises to you about your case?

**DEFENDANT HERNANDEZ:** There was a plead agreement at first. But we are still debating on the Count One. So I wasn't able to accept that.

**THE COURT:** I was going to come to that next.

So I guess the answer to my question is nobody's made you any promises.

**DEFENDANT HERNANDEZ:** No, sir.

**THE COURT:** Okay. The next thing I was going to ask

you is if you were offered a plea agreement.  You've already told me that you were.  But you've discussed that with your lawyer.

**DEFENDANT HERNANDEZ:**  Yes.

**THE COURT:**  All right.  Very well.  That's fine.

Now, Ms. De La Cruz, in your case I have this written plea agreement.  Did you read the plea agreement?

**DEFENDANT DE LA CRUZ:**  Yes.

**THE COURT:**  And did your lawyer also explain it to you?

**DEFENDANT DE LA CRUZ:**  Yes.

**THE COURT:**  Mr. Griffith, did you say that this was within the Guidelines?

**MR. GRIFFITH:**  Yes, your Honor.

**THE COURT:**  Okay.  So, Miss De La Cruz, well first off before I get there.

Ms. De La Cruz, let me take a moment.

**(Pause in the proceeding.)**

**THE COURT:**  It looks like you signed the plea agreement; is that correct?

**DEFENDANT DE LA CRUZ:**  Yes.

**THE COURT:**  Is the ——

**(Pause in the proceeding.)**

**THE COURT:**  Do you understand the terms of your plea agreement?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Has anyone made you any other promises other than the promises in the plea agreement?

**DEFENDANT DE LA CRUZ:** No.

**THE COURT:** The basic terms of your plea agreement are that you are agreeing to plead guilty to the one count in the indictment. And you are also agreeing to waive your right to appeal.

In exchange for that, the prosecution will recommend that you receive maximum credit for accepting responsibility and a sentence within the applicable Guideline range.

Is that your understanding of the basic terms of your plea agreement?

**DEFENDANT DE LA CRUZ:** Yes, sir.

**THE COURT:** Now the —— this plea agreement does contain provisions where you are waiving your right to appeal both your conviction and your sentence. And you are also giving up your right to file what's known as a 2255 motion. That's another way for a person to challenge his or her conviction or a sentence.

Do you understand that in this plea agreement you are giving up these appellate rights, except under very limited circumstances?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** And have you discussed that with your

lawyer?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** All right. Very well. That's the plea agreement.

**(Pause in the proceeding.)**

**THE COURT:** Next I need to discuss with you each a little bit about the sentencing procedures.

In Federal Court, the law requires the District Judge to use, and to calculate, and to consider the advisory federal Sentencing Guideline range. That's the point system.

Has your lawyer discussed with you how the Guidelines might be calculated in your case, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** The Guidelines sometimes can be complicated, not always. But sometimes the defense lawyer and the prosecutor disagree about the Guideline range. And sometimes they have to argue about it. Not always, but sometimes.

But the District Judge, that is Judge Ramos, is going to be the one to decide the Guideline range in your cases. And that hasn't happened yet.

So your lawyer's estimate about the Guideline range is just her or his best prediction. It's not a promise.

Do you understand, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Also, the Guideline range, while important, is advisory, subject to any mandatory minimum.

And that means that there are other things, or additional things, that Judge Ramos will consider when she decides your sentence.

So, for example, each of you will be present in person before Judge Ramos at your Sentencing Hearing. You will be given an opportunity to make a statement and to present matters in litigation. Your lawyer will have an opportunity to argue on your behalf.

Judge Ramos will consider certain statutory sentencing factors that include things such as your background, your history, what happened in your case. And she will also consider if there are reasons to impose a sentence that may be below the Guideline range, or possibly above it.

But, again, these things have not been considered yet. So no one can promise you what your sentence is going to be. And if you receive a sentence that is worse that you had hoped for, you will not be allowed to take back your plea of guilty for that reason.

Do you understand this sentencing process,

Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Okay.

**(Pause in the proceeding.)**

**THE COURT:** Are you pleading guilty voluntarily, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Has anyone threatened you or forced you to plead guilty, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** No.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** No.

**THE COURT:** All right. May I have the facts for Mr. Hernandez?

**MS. GOULD:** Yes, your Honor. Were we to go to trial in this matter, the Government would prove that,

"On July 19th of 2023, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives, ATF, learned of several investigations related to firearms purchases made by Jose Luis Hernandez.

Agents determined that the firearms purchases, including the recovery of firearms related to Hernandez in Mexico, were indicative of firearms trafficking.

On July 24th, 2023, Agent Guardado (phonetic) received information from Diamondback Firearms, LLC, a federal firearms licensee (FFL), located in Rockport, Texas, regarding an order they has received for three rifles.

The order for the firearms was made by Hernandez and another individual who we will refer to as Confidential Informant. Hernandez paid for the firearms with $38,500 in cash. The FFL notified Agent Guardado that the firearms had been ordered and were expected to arrive on July 28th, 2023, according to the Fed —— to the FedEx tracking information.

Based on the information that was received, ATF agents began surveillance of the gun store at the same time that the firearms was expected to arrive. And at 3:50 p.m. on July 28th, 2023, 2 men who were later identified as the Hernandez and the CI,

arrived at the gun store in a red Toyota Tacoma.

A few —— a few moments later, Hernandez and the CI left the store with three large pelican cases, got back into the Tacoma, and left the premises.

Moments after they left, officers from the City of Rockport Police Department pulled over the Tacoma for a traffic infraction. The CI was identified as the driver of the vehicle. And Hernandez was riding in the front passenger seat.

As the traffic stop was being conducted, ATF agent approached the scene and identified themselves to Hernandez and the CI.

Hernandez denied the agent's request that he voluntarily go back to the Rockport Police Department for an interview regarding the firearms purchases and requested an attorney.

The CI agreed to be interviewed at the scene. After waiving his Miranda warnings, the CI told agents that Hernandez had paid him $500 to drive Hernandez to the gun

store and to fill out the form to purchase the firearms.

CI told agents that Hernandez buys and resells guns. And that Hernandez needed the CI to fill out the purchase forms because Hernandez couldn't purchase any additional firearms under his own name, presumably because he was afraid that he would be detected by authorities. Additionally, the CI was unable to articulate the make, model, or caliber of the firearm that he purchased."

**THE COURT:** Okay. So a few things.

So, the Government's evidence would be that the —— was the person a CI, or does that happen to just be his initials?

**MS. GOULD:** No, it's —— it's a CI.

**THE COURT:** It's a CI.

**MS. GOULD:** We did that to conceal his identity.

**THE COURT:** Was the CI the straw purchaser under the Government's theory?

**MS. GOULD:** That's correct.

**THE COURT:** Okay. And then there is a requirement of affecting interstate or foreign commerce. Do you have any information about where the firearm was manufactured?

MS. GOULD: If I could have just a moment, your Honor.

THE COURT: You may.

**(Pause in the proceeding.)**

THE COURT: I know a little bit about firearms. And I can't tell you where it was manufactured. But I know it wasn't manufactured  in Texas. It's just one of the things I think the prosecution would have to prove. They have to prove that the firearm is manufactured.

MS. GOULD: So on, let's see ——

**(Pause in the proceeding.)**

THE COURT: Well let's just —— don't let me put words into your mouth, Ms. Gould. It's your case.

What is the Government's theory on how this was in or affecting interstate or foreign commerce?

MS. GOULD: Your Honor, it's our belief that the firearm was not —— not manufactured in the state of Texas because of its make and model. And, therefore, it had to cross state lines in order to be present here, thereby, affecting interstate or foreign commerce.

THE COURT: Okay. But do you know where it was manufactured?

MS. GOULD: If I —— I could have ——

THE COURT: You may, yeah.

MS. GOULD: —— one moment.

**(Pause in the proceeding.)**

**THE COURT:** And then while Ms. Gould is doing that, she's already testified, or not testified, proffered that the purchase was from a federal firearms licensed dealer. And that would be an indication that that firearm was engaged in commerce by buying and selling firearms.

I think that may in itself satisfy the interstate foreign — or foreign commerce requirement. But —

**MS. GOULD:** That's all true.

**THE COURT:** — we'll see what Ms. Gould has to say.

While Ms. Gould is looking at that, I'll also tell you, I don't know that this was covered with you in great detail. But it's appropriate that I tell you this.

The Government's theory on this offense in Count One, Mr. Hernandez, is a conspiracy theory. At its most basic level, a conspiracy is an agreement between two or more people to commit a crime. And the crime that you're charged with conspiring to commit is, trafficking in a firearm, or receiving a firearm, believing that it would constitute a felony.

Do you understand that?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** Okay.

Go ahead?

**MS. GOULD:** The agent has just informed me that that firearm is manufactured in the state of Tennessee.

THE COURT: In the state of Tennessee.

MS. GOULD: Yes.

THE COURT: Okay. And are there any other facts that are important to the plea proceeding, Ms. Gould?

MS. GOULD: I do not believe so, your Honor.

THE COURT: Okay.

MS. LANGFORD: Your Honor, if we just may ——

THE COURT: You may.

MS. LANGFORD: —— where we —— we do agree that these guns may have been found in Mexico. Mr. Hernandez had no idea about it .

THE COURT: Right. I'm not asking about any of the former —— to me that was background investigation.

MS. LANGFORD: Right.

THE COURT: There's another offense that your client's not charged with, which we don't need to get into about trafficking in firearms to Mexico.

But that's not the charge in Count —— in Count One. Okay.

(Pause in the proceeding.)

THE COURT: Is that basically what happened in your —— in your case, Mr. Hernandez?

DEFENDANT HERNANDEZ: Yes, sir.

THE COURT: All right.

(Pause in the proceeding.)

**THE COURT:** I don't want to get into all of the details of your case.

But do you admit that you were basically involved in a conspiracy to have a firearm —— to receive a firearm in violation of the federal laws?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** Okay. All right.

Now in your case, Ms. De La Cruz, I have a —— a written stipulation which is just basically a summary of what happened in your case.

Did you read the stipulation?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** And did you also sign it?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Is the information in your stipulation correct?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Now ——

**(Pause in the proceeding.)**

**THE COURT:** This looks like it's a relatively straightforward checkpoint case at the Sarita Checkpoint. Let me just see.

**(Pause in the proceeding.)**

**THE COURT:** It looks like on September 3rd you were driving a vehicle that pulled into the checkpoint and the

agents found two vacuum sealed bags concealed in the vehicle; is that correct?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** At that time, did you know that you were possessing with intent to distribute a controlled substance?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Did —— did you know that?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** Okay. All right.

And then I find that there is a sufficient factual basis to accept your plea as well.

**(Pause in the proceeding.)**

**THE COURT:** Counsel, does your client waive a formal reading of Count One of his indictment, Ms. Langford?

**MS. LANGFORD:** Yes, your Honor. He does.

**THE COURT:** And, Mr. Jiminez?

**MR. JIMINEZ:** With the Court's permission, yes, sir.

**THE COURT:** Before I take your plea, do you have any questions for me, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** No, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** No.

**THE COURT:** All right.

To the charge in Count One of your indictment, that is, conspiracy to traffic in a firearm, how do you plead?

Guilty or not guilty, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Guilty, sir.

**THE COURT:** And to the charge ⸺ and that was to the superseding indictment, Mr. Hernandez.

And to the charge in Count One of your indictment, Ms. De La Cruz, where it's alleged that you did knowingly and intentionally possess with intent to distribute more than 500 grams of a mixture or substance containing cocaine, how do you plead? Guilty or not guilty?

**DEFENDANT DE LA CRUZ:** Guilty.

**THE COURT:** All right. Thank you.

It is the finding of the Court in each of these cases that each Defendant is fully competent and capable of entering an informed plea. Each Defendant is aware of the nature of the charge and the consequences of the plea. Each plea of guilty is a knowing and a voluntary plea supported by a sufficient basis in fact.

And I will recommend to Judge Ramos to accept these pleas of guilty. I'm ordering Presentence Investigation Reports to be prepared. They'll be a scheduling order or a sentencing order that gives the lawyers the dates for the objections if any, and et cetera.

**(Pause in the proceeding.)**

**THE COURT:** Each of these cases is set for sentencing before Judge Ramos on March 19th, 2025 at 10 o'clock in the

morning.

Do you understand your court date, Mr. Hernandez?

**DEFENDANT HERNANDEZ:** Yes, sir.

**THE COURT:** And Ms. De La Cruz?

**DEFENDANT DE LA CRUZ:** Yes.

**THE COURT:** The last thing is, I need to look at the issues regarding to your bond.

**(Pause in the proceeding.)**

**THE COURT:** And I have reports that both Defendants have been compliant.

Ms. Gould, for your case, what's your position on bond? The ——

**MS. GOULD:** No objection to continuation on bond.

**THE COURT:** Mr. Griffith, in your case?

**MR. GRIFFITH:** No objection to a continuation, your Honor.

**THE COURT:** Okay. So, each of you may remain on bond pending sentencing. You have to continue to follow all of the rules that are in place for your bond. And make sure that you stay in contact with your lawyer and your probation officer.

Is there anything further from the defense, Ms. Langford?

**MS. LANGFORD:** No, your Honor.

**THE COURT:** Mr. Jiminez?

**MR. JIMINEZ:** No, your Honor.

THE COURT: All right. So the Defendants and their lawyers may be excused. Thank you for your appearances.

ALL ATTORNEYS: Thank you, your Honor.

THE COURT: You're welcome.

**(This proceeding was adjourned at 10:36 a.m.)**

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

| /s/*Cheryl L. Battaglia* | August 18, 2025 |
|---|---|
| Transcriber | Date |

2:23-CR-426

11/21/24 - 08/18/25