# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 2:23-CR-426 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | CORPUS CHRISTI, TEXAS |
| | . | THURSDAY, FEBRUARY 22, 2024 |
| JOSE LUIS HERNANDEZ, | . | 10:33 A.M. TO 11:43 A.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . . . . .

## RE-ARRAIGNMENT

### BEFORE THE HONORABLE JULIE K. HAMPTON
### UNITED STATES MAGISTRATE JUDGE

APPEARANCES:                          SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: JARED MARKS

COURTROOM CLERK:                 SASHA OZUNA

OFFICIAL INTERPETER:            LUZ MCCLELLAN

TRANSCRIPTION SERVICE BY:

**TRINITY TRANSCRIPTION SERVICES**
**1081 Main Street**
**Surgoinsville, TN 37873**
**281-782-0802**
**battshott@aol.com**

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

**TRINITY TRANSCRIPTION SERVICES**

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF TEXAS**

**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | CASE NO. 2:23-CR-426 |
| | . | |
| PLAINTIFF, | . | |
| | . | |
| V. | . | CORPUS CHRISTI, TEXAS |
| | . | THURSDAY, FEBRUARY 22, 2024 |
| JOSE LUIS HERNANDEZ, | . | 10:33 A.M. TO 11:43 A.M. |
| | . | |
| DEFENDANT. | . | |

. . . . . . . . . . . . . . . . . .


**RE-ARRAIGNMENT**

**BEFORE THE HONORABLE JULIE K. HAMPTON**
**UNITED STATES MAGISTRATE JUDGE**


Appearances:


**For the GOVERNMENT:**          **AMANDA GOULD, ESQ.**
                                 Assistant United States Attorney
                                 Office of the United States
                                   Attorney
                                 800 N. Shoreline Blvd., Suite 500
                                 Corpus Christi, TX 78401

**For DEFENDANT HERNANDEZ:**     **KRISTEN D. LANGFORD-HARRIS, ESQ.**
                                 Assistant Federal Public Defender
                                 Office of the Federal Public
                                   Defender
                                 606 N. Carancahua, Suite 401
                                 Corpus Christi, TX 78401-0697

U.S. Probation Office:           Jesus Botello
                                 Rudy Gonzalez
                                 Krista Rodriguez

Appearances (cont.):


United States Marshal:          Aaron Ainsworth
                                Luke Byars

Transcription Service:          Cheryl L. Battaglia
                                Trinity Transcription Services
                                1081 Main Street
                                Surgoinsville, TN 37873
                                281-782-0802
                                battshott@aol.com

**Corpus Christi, Texas; Thursday, February 22, 2024; 10:33 a.m.**

**CASE MANAGER OZUNA:** Court calls *Case Number 2:23-CR-426-1 USA versus Jose Luis Hernandez.*

Appearances, please?

**MS. GOULD:** Good morning, your Honor. Amanda Gould on behalf of the United States.

**MS. LANGFORD:** Kristen Langford for Mr. Hernandez.

**THE COURT:** Good morning, Mr. Hernandez.

**DEFENDANT HERNANDEZ:** Good morning, your Honor.

**(Pause in the proceeding.)**

**THE COURT:** We're set for a re-arraignment hearing this morning. Miss Langford, what's your announcement?

**MS. LANGFORD:** Your Honor, we are set to plead guilty to Counts One and Two of the indictment without a written plea agreement. And we do not have a stipulation of —— of fact.

But we don't have much contention with it. We'll —— we'll ——

**THE COURT:** Okay.

**MS. LANGFORD:** —— get there.

**MS. GOULD:** I believe it's a superseding indictment, your Honor.

**MS. LANGFORD:** Oh, yes.

**THE COURT:** I have the superseding. That's what I'm looking at.

**MS. GOULD:** Yes.

THE COURT: Let me get the right statute.

**(Pause in the proceeding.)**

MS. GOULD: Your Honor, if I may.

I'm prepared to set forth the elements of both of the offenses.

THE COURT: I am, too. I'm just getting the ——

MS. GOULD: Okay.

THE COURT: —— second one that's in the Fifth Circuit already.

**(Pause in the proceeding.)**

THE COURT: Thank you, though.

MS. GOULD: Yes, your Honor.

THE COURT: Mr. Hernandez, your attorney's announced that you want to enter a plea of guilty today to these two counts in your indictment without a plea agreement. Is that how you want to handle your case?

DEFENDANT HERNANDEZ: Yes, your Honor.

THE COURT: We need to place you under oath. If you'll please raise your right hand.

**(Defendant sworn.)**

THE COURT: Thank you. You can lower your hand.

You've now been placed under oath. If you do answer any questions falsely, your answers can later be used against you in a prosecution for perjury or for making a false statement.

Do you understand?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** What is your true and correct name?

**DEFENDANT HERNANDEZ:** Jose Luis Hernandez.

**THE COURT:** How old are you?

**DEFENDANT HERNANDEZ:** Thirty-three.

**THE COURT:** How many years did you go to school?

**DEFENDANT HERNANDEZ:** I got my GED. Went to college for a year.

**THE COURT:** So you read, write, speak, and understand English?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** In the last four or five years have you suffered from any kind of mental disorder, mental illness, or addiction to drugs or alcohol, or are you currently suffering from any of those conditions?

**DEFENDANT HERNANDEZ:** No, ma'am.

**THE COURT:** In the last 24 hours, have you taken any strong medicines or drugs that might impair your ability to understand what's happening here today?

**DEFENDANT HERNANDEZ:** No, ma'am.

**THE COURT:** Is your client competent, Miss Langford?

**MS. LANGFORD:** Yes, your Honor. He is.

**THE COURT:** Has he been able to discuss with you —— with you the nature and the consequences of the charge against

him and been able to assist you with possible defenses?

MS. LANGFORD: Yes, your Honor. He has.

THE COURT: Mr. Hernandez, you have the right to enter your plea of guilty before a United States District Judge. I am a United States Magistrate Judge.

I do not have authority to hear your plea, unless you consent to have me hear it.

Have you gone over this with your client? And does he consent to have me hear the plea, Miss Langford?

MS. LANGFORD: Yes, your Honor.

THE COURT: Is that correct, sir?

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: Thank you.

Did you receive a copy of the superseding indictment in your case?

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: Has your attorney reviewed this indictment with you and fully discussed your case with you?

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: Are you fully satisfied with Miss Langford's services in all respects?

DEFENDANT HERNANDEZ: Yes, ma'am.

(Pause in the proceeding.)

THE COURT: Under the Constitution and the laws of the United States, you are entitled to plead not guilty and to

demand a jury trial.

At your trial, you're presumed innocent. You cannot be convicted unless all 12 jurors agree that the Government has proven the charge beyond a reasonable doubt.

At your trial, Miss Langford would be present with you throughout the entire trial to provide you with all the required legal services. The Government would be required to ring its witnesses and its evidence into open court. You would have the right to see and hear those witnesses testify. And your attorney would have the right to question or cross examine the Government's witnesses as well as the right to object to the evidence that they do bring into court.

Then you would have the right to present your own evidence and your own witnesses before the jury. You'd have the right to issue subpoenas to compel your witnesses to come to court and testify in your favor.

You yourself also do have the right to testify. But no one can force you to testify. Because you have the right to remain silent. The Government must prove beyond a reasonable doubt that you're guilty.

Do you understand your jury trial rights?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** It is important that you understand your jury trial rights.

If you do plead guilty today, you will be giving up

those rights. And that includes your right to remain silent, because you'll have to admit to committing these offenses and answering any questions that I have —— that I might have about it.

Do you understand?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**(Pause in the proceeding.)**

**THE COURT:** In each of these counts, you're charged with aiding and abetting. So I'm going to go over the elements of that first.

**(Pause in the proceeding.)**

**THE COURT:** So aiding and abetting has four elements.

First, that the offense of either firearm trafficking or making a false statement on a ——

**(Pause in the proceeding.)**

**THE COURT:** —— on a ATF form, which is Count Two and Count One. That the offense was committed by some person that you associated with the criminal venture. That you purposefully participated in the criminal venture.

And that the —— and that you sought by action to make that venture successful. To associate with a criminal venture means that you shared what the criminal intent of the principal. And this element cannot be established if you had no knowledge of the principal's criminal venture.

Do you understand the aiding and abetting part of

these counts?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** All right. Iin Court One, you're charged with trafficking in firearms.

In violation of Title 18, United States Code Section 933(a)(2). That statute makes it unlawful for any person to receive from another person any firearm in or affecting interstate or foreign commerce if the recipient knows, or has reasonable cause to believe, that the receipt would constitute a felony.

Do you understand the charge in Count One?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**(Pause in the proceeding.)**

**THE COURT:** To convict you of this offense, the Government must prove three elements beyond a reasonable doubt.

First, that you knowingly received a firearm from another person. Second, that the receipt of the firearm was in of affecting interest or foreign commerce. Third, that you knew, or had reason to believe, that the receipt would constitute a felony.

Do you understand the elements the Government would have to prove to convict you?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** Are those the correct elements, Miss Gould?

**MS. GOULD:** Yes, your Honor.

**(Pause in the proceeding.)**

**THE COURT:** And in Count Two, you're charged with making a false statements to a firearms dealer. In violation of Title 18, United States Code Section 922(a)(6). That statute makes is a crime for anyone to knowingly make a false statement to a firearms dealer in order to buy a firearm or ammunition.

Do you understand the charge in Count Two?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**(Pause in the proceeding.)**

**THE COURT:** To convict you of this offense, the Government has to prove five elements beyond a reasonable.

First, that you made a false or fictitious oral or written statement. Second, that you knew the statement was false. Third, that the statement was made in connection with the acquisition of a firearm from a licensed firearm dealer. Fourth, that the statement was intended to, or was likely to, deceive the licensed firearm dealer.

**(Pause in the proceeding.)**

**THE COURT:** And fifth, excuse me, that the alleged false statement was material to the lawfulness of the sale or disposition of the firearm.

Do you understand the elements the Government would have to prove to convict you of Count Two?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**(Pause in the proceeding.)**

**THE COURT:** All right. If you are convicted of these offenses in Count One, you face up to 15 years in federal prison. In Count Two you face up to 10 years in federal prison.

In each count, you could also be fined up to $250,000. After serving any prison term, upon release from prison, you're facing up to three years of supervised release.

Supervised release is a period of supervision of your behavior by the Court after you're released from serving any prison sentence. There is no parole in the federal system.

While on supervised release, you will have to follow certain rules adopted by the Court. If you violate any term of condition of your supervision, your supervision can be revoked and you could be sent to prison for a maximum of two years.

Then if there's any time left on your supervised release, you can be released from prison back to supervised release. And if you violate again, you can be revoked again, and be sent back to prison for another maximum of two years.

This can happen multiple times until you've completed serving your full term of supervised release. This is a felony offense, so there's a mandatory $100 Special Assessment in each of these counts.

Do you understand the maximum punishment you face if

convicted of these offenses and the consequences of violating supervised release?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** Are you a United States citizen?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**(Pause in the proceeding.)**

**THE COURT:** All right. I want to give you some information, Mr. Hernandez, about what's going to happen at your sentencing hearing.

Before the Court sentences you, a Presentence Investigation Report will be prepared. A U.S. Probation Officer will prepare that report after they interview you. I recommend that Miss Langford be present with you for the interview.

After a draft of the Presentence Investigation Report is prepared, Miss Langford's going to go over it with you. If you see any mistakes in that report, you need to point them out to your lawyer. Because she is trained to determine whether those mistakes are going to make any difference at your sentencing hearing.

At your sentencing hearing, the Court will rule on any objections that any of the parties have made and will calculate, determine, and consider the Advisory Guidelines of the United States Sentencing Commission, together with any departures or variances from those Guidelines, as well as other

sentencing factors that the Court is required by law or statute to consider.

Your Guideline range will be based on the offense that you've committed, your individual criminal history, and various aggravating or mitigating factors that the Court might find apply to you.

Now it is mandatory that the Court calculate the Guidelines. And once they're calculated, the Court must consider imposing a Guideline sentence. But in the end, the Court does not have to impose a Guideline sentence.

The Court can sentence you more or less severely than what the Guideline calculation comes out to be. But you can see that the Guidelines are going to be a very important part of your sentencing hearing.

Have you and Miss Langford discussed how the Guidelines might be calculated in your case and applied to you?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** Has anyone threatened you or forced you to plead guilty or promised you leniency if you would plead guilty?

**DEFENDANT HERNANDEZ:** No, ma'am.

**THE COURT:** Are you voluntarily pleading guilty because you believe you are guilty of these offenses?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** Now your attorney's told me that there's

no plea agreement between you and the Government.  This means that the Government's lawyer is going to be free to recommend any sentence up to the maximum sentence that she believes is appropriate in your case.

Do you understand?

**DEFENDANT HERNANDEZ:**  Yes, ma'am.

**THE COURT:**  If you're not satisfied with the recommendation of the Government's lawyer, or you think it's too harsh, you will not be able to take back your guilty plea.

Do you understand?

**DEFENDANT HERNANDEZ:**  Yes, ma'am.

**THE COURT:**  Miss Langford, was a plea agreement offered to Mr. Hernandez?  Was it explained to him?  And did he reject it?

**MS. LANGFORD:**  That's correct, your Honor.

**THE COURT:**  Is that correct, Mr. Hernandez?

**DEFENDANT HERNANDEZ:**  Yes, ma'am.

**(Pause in the proceeding.)**

**THE COURT:**  Do you understand that you have no agreement and no promise from the District Court as to what sentence will be imposed in your case?

**DEFENDANT HERNANDEZ:**  Yes, ma'am.

**THE COURT:**  The District Judge will be free to impose a sentence up to the maximum sentence.  If that happens, you will not be able to take back your guilty plea.

If you don't receive a sentence that you were expecting, or that you were hoping for, you will not be able to take back your guilty plea.

Do you understand?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** It's not too late to change your mind. Do you still want to plead guilty?

**(Pause in the proceeding.)**

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**(Pause in the proceeding.)**

**THE COURT:** All right. Miss Gould, if you'll arraign Mr. Hernandez in Counts One and Two of this indictment. I'm putting it on the screen, Mr. Hernandez, if you'd like to read along.

**MS. GOULD:** Yes, your Honor.

In *United States of America versus Jose Luis Hernandez*, the superseding indictment reads in,

Count One: That on or about July 28th, 2023 in the Corpus Christi Division of the Southern District of Texas, and elsewhere within the jurisdiction of the Court, the Defendant, Jose Luis Hernandez, did receive from another person in or otherwise affecting interstate or foreign commerce, a firearm. To wit: a Barrett Firearms

Manufacturing Model 82 81 .50 emg caliber rifle, serial number AA015958, knowing or having reasonable cause to believe that such receipt would constitute a felony as defined in Section 922(a)(6) and 924(a)(2), or did attempt or conspire to do so, or did aide and abet such receipt."

Excuse me.

"In violation of Title 18, United States Code Sections 2(a) and 933(a)(2)."

Mr. Hernandez, had do you plead to Count One of the superseding indictment? Guilty or not guilty?

**DEFENDANT HERNANDEZ:** Guilty.

**MS. GOULD:** As to Count Two, it alleges that, "On or about July 28th, 2023 in the Corpus Christi Division of the Southern District of Texas and elsewhere within the jurisdiction of the Court, the Defendant, Jose Luis Hernandez, did aide, abet, counsel, command, induce, procure and willfully cause another person, S.M., in connection with the acquisition of a firearm from Diamondback Firearms, LLC, a federally licensed firearms dealer, to knowingly make false and fictitious

statement to the dealer, which statement was intended and likely to deceive the dealer with respect to facts material to the lawfulness of the sale and other disposition of the firearm under Chapter 44 of Title 18, United States Code.

In that S.M. stated in the Bureau of Alcohol, Tobacco, and Firearms Form 4473, that S.M. was the actual buyer of the firearm. When in truth and fact that S.M. there —— then and there around it, S.M. was acquiring the firearm on behalf of the Defendant, Jose Luis Hernandez.

In violation of Title 18, United States Code Sections 2(a), 922(a)(6), and 924(a)(2)."

Mr. Hernandez, how do you plead to Count Two of the superseding indictment? Guilty or not guilty?

**DEFENDANT HERNANDEZ:** Guilty.

**(Pause in the proceeding.)**

**THE COURT:** Thank you.

Mr. Hernandez, I'm going to ask the Government at this time to summarize what the evidence is in your case as if your case were going to trial.

Please listen carefully. Because after Miss Gould's

summary to the Court, there's a few questions I need to ask you about the summary. Okay?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** Miss Gould, what are the facts for this case?

**MS. GOULD:** Yes, your Honor. Were we to go to trial in this case, the Government would prove that,

"On July 19th of 2023, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives learned of several investigations related to firearms purchases made by Jose Luis Hernandez. Agents determined that the firearms purchases, including the recovery of firearms related to Hernandez in Mexico, were indicative of firearms trafficking. On July 24, 2023, Agent Guardado (phonetic) from ATF received information from Diamondback Firearms, LLC, a federal firearms licensee located in Rockport, Texas, regarding an order that they had received for three rifles. The order of firearms was made by Hernandez and another individual, hereinafter CI Hernandez paid for the firearms with

$38,500 in cash.

The FFL, federal firearms licensee, notified Agent Guardado that the firearms had been ordered and were expected to arrive on July 28th, 2023, according to the FedEx tracking information.

Based on the information that was received, ATF agents began surveillance of the gun store at the time that the firearms were expected to arrive.

At approximately 3:50 p.m. on July 28th, 2023, 2 men who were later identified as Hernandez and the CI arrived at the gun store in a red Toyota Tacoma.

A few moments later, Hernandez and the CI left the store with three large pelican cases. Got back into the Tacoma. And left the premises.

Moments after they left the premises, officers from the City of Rockport Police Department pulled the Tacoma over for a traffic infraction.

The CI was identified as the driver of the vehicle and Hernandez was riding in the front passenger seat.

As the traffic stop was being conducted, ATF agents approached the scene and identified themselves to Hernandez and the CI. Hernandez denied the agents' request that he go voluntarily back to the Rockport Police Department for an interview regarding the firearms purchases and requested an attorney.

The CI did agree to be interviewed at the scene. And after waiving his Miranda Warning, the CI told agents that Hernandez paid him $500 to drive Hernandez to the gun store and fill out the form to purchase the firearms.

The CI told agents that Hernandez buys and resells guns. And that Hernandez needed the CI to fill out the purchase forms, because Hernandez couldn't purchase any additional firearms under his own name. Additionally, the CI was unable to articulate the make, model, or caliber of the firearm that he purchased. And specifically the firearm that he purchased in his name on behalf of Hernandez was verified on its manufacturing model 82 81

".50 emg caliber rifle, serial number AA015958."

**(Pause in the proceeding.)**

**THE COURT:** Miss Langford, any comment on the Government's summary of evidence?

**MS. LANGFORD:** Yes, your Honor.

We just want to clarify that it was mentioned in that first paragraph that possibly the firearms were — or a firearm was found in Mexico and maybe that was indicative of firearms trafficking.

We're remain silent to that. That's not what he's charged with. And there's no evidence of that.

**THE COURT:** All right. With the clarification by your lawyer, Mr. Hernandez, is what the Government's lawyer said true and correct?

**DEFENDANT HERNANDEZ:** I'm sorry.

**THE COURT:** With your attorney's clarification about the Mexico issue, is what the Government's attorney told me about your case true and correct?

**(Pause in the proceeding.)**

**DEFENDANT HERNANDEZ:** Uh, I have no idea about that firearm where it —

**THE COURT:** Did you hear the — did you hear the statement by the Government's attorney?

**DEFENDANT HERNANDEZ:** Yes, I heard it.

THE COURT: So is —— is everything she told me true and correct with the exception of the Mexico issue that Miss Langford's brought up.

DEFENDANT HERNANDEZ: Oh, yes, ma'am.

THE COURT: Okay. Is there anything you'd like to add to the statement made to me by the Government?

DEFENDANT HERNANDEZ: No, ma'am.

THE COURT: I find that there's a factual basis to support Mr. Hernandez' plea.

**(Pause in the proceeding.)**

THE COURT: You're being a little hesitant. Do you still want to go forward today, Mr. Hernandez?

DEFENDANT HERNANDEZ: I'm just very emotional and ——

THE COURT: Do you believe the Government can prove the evidence that they just told me and —— if you went to trial?

DEFENDANT HERNANDEZ: Prove that I had something to do with that firearm?

THE COURT: What the Government just told me was that you were working with a confidential informant to purchase a firearm. Did you not hear the —— the statement by the Government's attorney?

DEFENDANT HERNANDEZ: Confidential informant?

THE COURT: When she said, CI, there was a confidential informant. Is that S.M. in the indictment ——

**MS. GOULD:** Yes, your Honor.

**THE COURT:** —— Miss Gould? Yeah.

**MS. GOULD:** It is, your Honor.

**(Pause in the proceeding.)**

**THE COURT:** So in Count Two it refers to someone by the name of S.M.

**MS. GOULD:** Yes.

**THE COURT:** The Government's telling me that that was a confidential informant that gave information to the Government about your conduct.

Did you hear all that?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**(Pause in the proceeding.)**

**DEFENDANT HERNANDEZ:** I heard that. But I wasn't working with him. Okay. I understand. Yes, ma'am.

**(Pause in the proceeding.)**

**THE COURT:** So what were you doing?

**(Pause in the proceeding.)**

**DEFENDANT HERNANDEZ:** I was purchasing my firearms. I purchased my own firearms.

**(Pause in the proceeding.)**

**MS. LANGFORD:** And he was legal to purchase the firearms. And he purchased two that day.

The —— the issue is —— and what makes this a little bit strange is it's kind of like a reverse straw purchaser

situation. Mr. Hernandez asked S.M. to purchase the one gun.

THE COURT: Uh-huh.

MS. LANGFORD: And he did on that day. And they both knew that the gun was actually going to go to Mr. Hernandez.

THE COURT: So that's Count Two, Mr. Hernandez, is that you caused, or worked with a —— worked with S.M. is what it's charging you with.

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: —— to purchase a firearm. And the form that S.M. filled out said it was for him.

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: When it was really for you.

So that's what you're being charged with in Count Two. Is that true?

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: Okay.

(Pause in the proceeding.)

DEFENDANT HERNANDEZ: I'm sorry. I'm sort of emotional today.

THE COURT: It's okay. It's okay.

I just want you to make sure you understand what you're doing.

DEFENDANT HERNANDEZ: Yes, ma'am.

(Pause in the proceeding.)

THE COURT: Is Count One the same firearm or a

different firearm?

MS. GOULD: It's the same one, Judge.

THE COURT: What's the felony? I — maybe I missed that.

MS. GOULD: The felony is the straw purchase.

THE COURT: Oh, I see. Okay.

So Count One you're charging — you're charged with —

THE COURT: Hmmm.

**(Pause in the proceeding.)**

THE COURT: Did you tell me about interstate or foreign commerce? Did I miss that, Miss Gould?

MS. GOULD: I'm sorry?

THE COURT: Did you tell me about interstate or foreign commerce with a firearm?

MS. GOULD: Oh, I didn't. I can add that, though.

The firearm that Barrett Firearms Manufacturing Model 82 81 .50 emg caliber rifle, serial number AA01598 was manufactured outside of the state of Texas and, therefore, has traveled in interstate commerce in order to be purchased at the Rockport firearms dealer, at which Mr. Hernandez had S.M. fill out the fictitious form.

THE COURT: Okay. So Count One, they're — they're charging you with receiving from S.M. a firearm that traveled in or affecting interstate or foreign commerce is what she just

TRINITY TRANSCRIPTION SERVICES

told me. the firearm was manufactured outside the state of Texas.

If you knew or had reason to believe that the receipt by you of that firearm would be a felony. And so the felony that they're talking about is Count Two, the false statement to the firearms dealer.

So did you know by receiving the firearm from S.M. that that would be a felony?

**DEFENDANT HERNANDEZ:** No. I did not know that.

**(Pause in the proceeding.)**

**THE COURT:** Did you have reason to believe that? It's know or reason to believe.

**(Pause in the proceeding.)**

**DEFENDANT HERNANDEZ:** Yes. No I absolutely.

**THE COURT:** Okay. So tell me what you thought you were doing, Mr. Hernandez.

**(Pause in the proceeding.)**

**THE COURT:** Why did you ⸺ why did you work with S.M. if you could purchase the firearm yourself?

**DEFENDANT HERNANDEZ:** Just ⸺ he's an old friend of mine. And he needed help getting money. And I let him purchase the firearm anyway, so that's the only way I could help out.

**THE COURT:** How was that helping him?

**DEFENDANT HERNANDEZ:** He needed the money.

**(Pause in the proceeding.)**

THE COURT:  So you were giving him money to purchase a firearm for you?

DEFENDANT HERNANDEZ:  Basically.

THE COURT:  And you purchased other firearms that day yourself?

DEFENDANT HERNANDEZ:  Yes.  For myself, yes.

THE COURT:  So, I'm sorry.  Can you explain to me why you didn't just purchase this Baretta Firearms Model 82A.

DEFENDANT HERNANDEZ:  I should have.  That's what I was — was planning to do from the beginning.  Yes, ma'am.

**(Pause in the proceeding.)**

THE COURT:  Why didn't you?

DEFENDANT HERNANDEZ:  Like I said, XXXXX was an old friend of mine.  And I've been trying to get him to interact with my hobby.  I'm very passionate about firearms.  And I wanted to that he could turn over and I had nothing else for him to help him out.  So, that was only — I — I know I shouldn't have done that.

But it was the only way I knew to help him and interact with him.

**(Pause in the proceeding.)**

THE COURT:  Did it have anything to do with because this is a .50 caliber rifle?

DEFENDANT HERNANDEZ:  No, ma'am.

THE COURT: What other firearms were you purchasing that day?

DEFENDANT HERNANDEZ: Another .50 caliber, which is a shorter barrel version. It's not a short barrel, but it's shorter than the one he obtained, and a ——

(Pause in the proceeding.)

DEFENDANT HERNANDEZ: —— all I wanted him to show a .50 caliber. I wanted to do a YouTube that was showing the different ballistics in the barrel, and everything, and type of weapon.

(Pause in the proceeding.)

THE COURT: So when you received the firearm from this S.M. person, did you know it was a felony offense to do that?

DEFENDANT HERNANDEZ: Yes, ma'am.

(Pause in the proceeding.)

THE COURT: Do you still want to proceed with your plea of guilty?

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: Anything else, Miss Langford?

MS. LANGFORD: You know, your Honor, I'll just add this is a strange situation. We —— we were planning on actually going to trial from the beginning. But we did a sit down, a show and tell, with Agent Guardado and —— and Miss Gould. And decided that ——

THE COURT: It is a strange situation.

Usually, there's a reason why you're not able to purchase the firearm when these type of charges come forward.

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: Like you're a felon or something like that.

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: So, I mean, do you want more time to talk to Miss Langford? This is a very —— like she's saying it's a very unusual situation. And —— and I don't think I've seen a situation like this.

Technically, what I'm hearing, I think technically, if you're agreeing to everything they're saying, yes. It's probably conviction if you want to go forward today.

But you will be a convicted felon after today.

DEFENDANT HERNANDEZ: I understand. I just want to go back to not —— not stressing. I have my wife stressing, you know, my son.

(Pause in the proceeding.)

THE COURT: Do you need more time with your lawyer? Do you want to proceed?

(Pause in the proceeding.)

(Voices whispering.)

THE COURT: You know, I'm a little uncomfortable at this point.

**MS. LANGFORD:** I know. I know.

**THE COURT:** So let's take a break.

**MS. LANGFORD:** I know.

**THE COURT:** Let's —— why don't you guys go outside, discuss what you want to do. You do not need to make this —— this is a very big decision you're making. If you need more time, we can reset this.

But, yeah. If you do go forward with this plea today, you're a convicted felon after today.

**DEFENDANT HERNANDEZ:** I understand.

**THE COURT:** And you will not be able to purchase firearms because of that.

**DEFENDANT HERNANDEZ:** I understand.

**THE COURT:** For the rest of your life.

**DEFENDANT HERNANDEZ:** All right. I want just to be with my family.

**THE COURT:** Okay. I'm going to —— we're going to take a break. Why don't you go outside and talk to Miss Langford. And if you still want to proceed, we'll go forward. And if you want more time, we can do that, too. Okay?

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** All right. We'll be in recess.

**(Recess taken from 10:58 a.m. to 11:30 a.m.)**

**THE COURT:** Court recalls *2:23-CR-426, U.S. versus Jose Luis Hernandez.*

Appearances, please.

**MS. GOULD:** Amanda Gould on behalf of the United States.

**MS. LANGFORD:** Kristen Langford for Mr. Hernandez.

**(Pause in the proceeding.)**

**THE COURT:** Okay.

**(Pause in the proceeding.)**

**THE COURT:** I have some questions, Miss Gould, for the Government.

I just went back and reviewed. I know this 933's a brand new statute.

**(Pause in the proceeding.)**

**THE COURT:** And I haven't seen it before.

**(Pause in the proceeding.)**

**THE COURT:** So I'm not sure I have the element.

If he knows or has reason to believe that his receipt would constitute a felony. Why is his receipt if he's not a prohibited person, why does that constitute felony, Miss Gould?

**MS. GOULD:** The reason why is because he used a straw purchaser to obtain the firearm arm, so — with the idea in mind that he would be the ultimate recipient.

So in doing that, he aided and abetted the felony of straw purchasing the firearm.

**THE COURT:** His receipt would constitute a felony.

**MS. GOULD:** Yes, your Honor.

THE COURT: How? I'm not — I'm still not getting it.

MS. GOULD: He would be receiving a firearm that he put somebody else to straw purchase.

**(Pause in the proceeding.)**

THE COURT: Well, you have — in this — there's not really that I know. I mean, the firearms statutes are difficult. Sometimes they don't really hit the nail on the head. But I don't know that there's really a straw purchaser statute, Miss Gould.

Is that — is it Count Two that you're referring to?

MS. GOULD: Yes. That is.

THE COURT: Okay. So that's lying on a form, which is a felony, or aiding and abetting the lying on a form.

MS. GOULD: Yes, your Honor.

THE COURT: So the element that has to be proven is that he knew or had reason to believe his receipt of the firearm would constitute a felony, receiving it.

MS. GOULD: Yes, your Honor.

He aided and abetted the commission of Count Two. Therefore, his receipt of the firearm when he knew that it had been straw purchased by the lying on a form, he led the guy up to lie on the form, then with the idea in mind that he was going to be the ultimate recipient of the firearm.

**(Pause in the proceeding.)**

MS. GOULD: And he paid the guy.

THE COURT: But the charge is lying on a form, not receive the firearm. His receipt of the firearm itself, I do not believe's a felony. I'm not seeing it.

Miss Langford, am I missing something?

MS. LANGFORD: No, I ——

**(Pause in the proceeding.)**

MS. LANGFORD: We —— I know, I ——

THE COURT: There's probably ——

MS. LANGFORD: I feel you ——

THE COURT: —— no law —— case law on this or very little.

MS. GOULD: No, there's not.

MS. LANGFORD: I know, it's ——

**(Pause in the proceeding.)**

THE COURT: I think that's what you were struggling with, Mr. Hernandez, when I asked you.

DEFENDANT HERNANDEZ: Yes, ma'am.

MS. LANGFORD: No, it was asked ——

THE COURT: I mean, causing someone, or aiding and abetting someone to lie on a form is different elements than receipt of a firearm constituting a felony.

MS. GOULD: But he did receive a firearm.

THE COURT: Count Two has nothing to do with receipt of a firearm.

**MS. GOULD:** I know.

**THE COURT:** Count Two is ——

**MS. GOULD:** But Count One ——

**THE COURT:** —— you know, lying on a form.

**MS. GOULD:** Count One does. And he knew that the firearm that he was going to be receiving that he, in fact, did receive, because he was in the car, had been purchased in a way that was in violation of the statute.

And, in fact, he told the guy who purchased it for him, that he didn't want to fill out any more forms.

**THE COURT:** But even if Mr. S.M. or Miss S.M., or whoever that is, purchased the firearm lying on the form, or purchased the firearm, at any point S.M. could have turned it over to Mr. Hernandez. It's not a felony.

**MS. GOULD:** It —— but the —— the way in which he did it was a felony. Because the ultimate —— the ultimate purchaser was Mr. Hernandez. He's the one who put up the money. He paid S.M. to go and fill out the form.

**THE COURT:** Am I being told everything. I feel like there's something missing.

You talked about Mexico. I mean, you talked about some information about gun trafficking. This is a gun trafficking charge. And it just doesn't seem to fit.

Is there some other evidence that you're —— you're leaving out from your facts, Miss Gould?

**MS. GOULD:** Yes, your Honor.

What brought the ATF agent's attention to Mr. Hernandez in the first place, was that certain firearms had been recovered in Mexico that then got traced back to him that he had purchased in the first instance that then ended up in Mexico. There was other events that he has purchased multiple .50 caliber rifles.

One of the firearms that he bought that was —— and these .50 caliber rifles, Judge, when we did the show and tell over at ATF, these are not just ordinary looking rifles. These rifles are big.

They are the sort of rifles that one would mount, let's say, on the back of a Jeep ——

**THE COURT:** Uh-huh.

**MS. GOULD:** —— in order to, you know, get good coverage and be mobile. These are not the kind of things that ordinarily you would just hold and shoot.

I was surprised at the size of them when I saw them. So there's that —— that aspect of it. He had —— these are not the only .50 caliber firearms that he purchased. If I could, Judge, my agent is here. He can enlighten the Court as to any ——

**THE COURT:** And it sounds like ——

**MS. GOULD:** —— weapons that he might have.

**THE COURT:** Right. I don't know if you have any

information about this particular day.  But it sounds like ——

the —— the purpose of this statute from the Court's

understanding, is for gun trafficking.

And if you have information that weapons that

Mr. Hernandez has purchased end up in Mexico, that is a felony

offense.  But that's not the felony offense you're referring

to.

He receives him for some other purchase than to have

them for himself, which everyone's telling me he received them

himself as the owner.

**MS. GOULD:**  But he used a straw purchaser to get

them.

**THE COURT:**  The receipt, though, is what I'm looking

at.  He's not a prohibited person.

**MS. GOULD:**  But he did put somebody up to lie on a

form so that he could ultimately receive it.

**THE COURT:**  And that's charged in Count Two.  I

understand that.  Totally different elements.

**MS. GOULD:**  But I think that they overlap.

So it's one thing to put somebody up to lie on a

form.  That's Count Two.  But then when he received the firearm

as a result of putting somebody up to lie on the form, that's

where Count One is.  That's —— that's the offense that is

alleged in Count One.

**THE COURT:**  All right.

Miss Langford, what do you think?

**(Pause in the proceeding.)**

**MS. LANGFORD:** I mean, I ——

**(Pause in the proceeding.)**

**MS. LANGFORD:** I understand Miss Gould's point. And I think that's where I ——

**THE COURT:** I do not believe this is the purpose of this statute. That's why I bother.

**MS. LANGFORD:** But I —— I —— but I do agree with —— with ——

**THE COURT:** Yeah.

**MS. LANGFORD:** —— your Honor that ——

**(Pause in the proceeding.)**

**MS. LANGFORD:** —— that certainly that's not —— that wasn't the purpose of the statute.

**(Pause in the proceeding.)**

**MS. LANGFORD:** Your Honor, I —— and I —— I believe the Government, you know, only had permission to offer a plea agreement to Count One. So we're stuck with this weird one.

**(Pause in the proceeding.)**

**MS. LANGFORD:** I —— I —— I keep thinking, your Honor, when you're making these points, how could I argue that to a jury.

**(Pause in the proceeding.)**

**MS. LANGFORD:** And I think you're —— you're right in

that —

**(Pause in the proceeding.)**

**MS. LANGFORD:** —— Count Two ——

**THE COURT:** I'm not taking a really a position either way.

**MS. LANGFORD:** I know. I know. I know.

**THE COURT:** It's just a question mark when ——

**MS. LANGFORD:** Right. Right. Right.

**THE COURT:** —— I went back and started reviewing the elements again.

**MS. LANGFORD:** Yeah. And now you've got me hung up on this receipt also.

**(Pause in the proceeding.)**

**THE COURT:** Before I brought this issue up, were you wanting to proceed with the plea, Miss Langford?

**MS. LANGFORD:** We were going to. Yes, your Honor.

**THE COURT:** I'm comfortable with proceeding with Count Two. And then we can reset this issue so you all can research the elements issue for Count One.

Do that work, Miss Gould, so I can get those answered?

**MS. GOULD:** Yes, that's fine.

**THE COURT:** I know it's a new statute.

**MS. LANGFORD:** Yeah.

**THE COURT:** But if you could get any guidance from

your DOJ higher ups, Miss Gould, maybe that would help.

MS. GOULD: Yes, your Honor.

THE COURT: Or ATF, or something.

MS. LANGFORD: Yeah.

THE COURT: Okay.

So I'm not going to accept the plea at this time for Count One. We're just going to put that on hold, Mr. Hernandez.

MS. LANGFORD: Thank you.

THE COURT: So that your lawyer can have more time to research whether that is an issue, the receipt —— knowing that the receipt was a felony offense issue.

And so on Count Two, do you want to proceed with your plea of guilty?

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: And regarding Count Two, with the clarification of what your lawyer said, is what the Government's attorney said true and correct?

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: I find that there's a factual basis to support Mr. Hernandez' plea to Count Two.

Do you believe all the requirements of Rule 11 have been met, Miss Langford?

MS. LANGFORD: Yes, your Honor.

THE COURT: Miss Gould?

**MS. GOULD:** Yes, your Honor.

**THE COURT:** All right.

It's the finding of the Court in this case that this Defendant's fully competent and capable of entering an informed plea. He's aware of the nature of the charge and the consequences of his plea to Count Two. And his plea of guilty is a knowing and voluntary plea, supported by an independent basis in fact that contains each of the essential elements of the offense in Count Two.

I will recommend that the District Court adopt my findings and accept your guilty plea to Count Two. I'll file written findings and a recommendation to the District Court. Counsel will have 14 days to file any objections to that.

A Presentence Investigation Report is ordered. And your sentencing on Count Two at this time is going to be before Judge Ramos on June the 12th at 1:30 in the afternoon.

**DEFENDANT HERNANDEZ:** Yes, ma'am.

**THE COURT:** Now regarding the other issue, let — can we just set this for a status conference. Miss Langford, is that okay with you?

**MS. LANGFORD:** That would be great. Thank you.

**THE COURT:** Miss Gould?

**MS. GOULD:** Yes, your Honor.

**THE COURT:** When do you all want to come back? I mean, how much time do you think you'll need.

**(Pause in the proceeding.)**

THE COURT: Miss Gould, do you have a day in mind?

MS. GOULD: I'm looking at my calendar, Judge. I have a couple of weeks in a row where I need to go to Laredo part of the week, which tends to — I sort of need to rely upon my colleagues in Houston to get any kind of answer.

THE COURT: Okay.

MS. GOULD: So —

**(Pause in the proceeding.)**

MS. GOULD: If — if the Court would indulge us to reset it until a full month, March 20th.

THE COURT: Miss Langford, are — are you asking to continue the case for the trial docket, final pretrial and trial docket for Count One?

MS. LANGFORD: One. Yes, your Honor.

THE COURT: So that you can have more time?

MS. LANGFORD: Yes, your Honor. I am.

THE COURT: Okay.

I'll grant the Motion to Continue for the other part of the case. And let's see, when can we set? This is going to be Judge Ramos.

Do you have dates, Sasha?

CASE MANAGER OZUNA: One month out.

THE COURT: Yeah.

CASE MANAGER OZUNA: March 20th.

THE COURT: And that'll be final pretrial before me?

**(Pause in the proceeding.)**

THE COURT: March 20th? And then what's the jury trial date?

**(Pause in the proceeding.)**

THE COURT: I'm looking at Judge Ramos' docket.

CASE MANAGER OZUNA: Yes.

**(Pause in the proceeding.)**

THE COURT: April 19.

CASE MANAGER OZUNA: A jury trial setting.

**(Pause in the proceeding.)**

CASE MANAGER OZUNA: April 8th?

THE COURT: Yeah. Okay. April 8th.

Okay. So your final pretrial conference hearing, Mr. Hernandez, is going to be before me on March the 20th at 10 o'clock in the morning. Your jury trial's going to be April the 8th at 9 o'clock in the morning before Judge Ramos.

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: And if we need an earlier setting, if you all just let —— let us know we can resolve this another way, just let me know.

MS. LANGFORD: Yes, your Honor.

THE COURT: Okay. And I'll issue an order so you have those dates.

Mr. Hernandez has been compliant with his bond

TRINITY TRANSCRIPTION SERVICES

conditions. Miss Gould, any objection to allowing him to remain on bond.

MS. GOULD: No, your Honor.

THE COURT: All right. You're going to be allowed to remain on bond, Mr. Hernandez, while your case is — part of your case is still pending and the other's pending sentencing.

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: If you violate any of your bond conditions, or if you fail to appear at any future court setting, your bond can be revoked and you could be charged with another federal offense called failure to appear.

Do you understand?

DEFENDANT HERNANDEZ: Yes, ma'am.

THE COURT: Anything else, Miss Langford?

MS. LANGFORD: That's it, your Honor. Thank you.

THE COURT: Miss Gould?

MS. GOULD: Nothing from the Government, your Honor.

THE COURT: All right. Thank you. That concludes our hearing.

Mr. Hernandez, good luck on bond, sir.

DEFENDANT HERNANDEZ: Thank you.

MS. LANGFORD: Thank you.

**(This proceeding was adjourned at 11:43 a.m.)**

42

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Cheryl L. Battaglia*                    August 19, 2025

          Transcriber                              Date

2:23-CR-426

02/22/24 - 08/19/25